Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| JOSÉ COLÓN NIEVES<br><br>Recurrente<br><br>v.<br><br>AUTORIDAD DE ENERGÍA ELÉCTRICA DE PUERTO RICO y LUMA ENERGY SERVO, LLC<br><br>Recurrida | TA2025AP00140 | Apelación acogida como REVISIÓN JUDICIAL Procedente del Negociado de Energía de Puerto Rico<br><br>Caso Núm.: NEPR-QR-2023-0019<br><br>Sobre: Revisión Formal de Facturas de Servicio Eléctrico |

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 16 de octubre de 2025.

Comparece ante nos el señor José Colón Nieves (señor Colón Nieves o recurrente) mediante un recurso de *Apelación*, acogido como revisión administrativa,[1] y solicita que revisemos la *Resolución Final y Orden* emitida y notificada el 13 y 16 de junio de 2025, respectivamente, por el Negociado de Energía de Puerto Rico (NEPR).[2] A través de la referida determinación, el NEPR desestimó y archivó la *Querella* incoada por el recurrente en contra de la Autoridad de Energía Eléctrica de Puerto Rico (AEE) y LUMA Energy Servo, LLC (LUMA o recurrida).

Por los fundamentos expuestos a continuación, **confirmamos** el dictamen recurrido.

-I-

El presente caso tiene su génesis el 15 de marzo de 2022, cuando el recurrente cursó a la recurrida un documento intitulado *Objeci[ó]n a Factura*

---

[1] *Véase* SUMAC TA, Entrada Núm. 3.
[2] *Íd.*, Entrada Núm. 1, Apéndice *Resolución Final y Orden*.

*Estimada, Consumo Excesivo, Cargo por Atraso y Error por Servicio de Energía Eléctrica*.[3] En específico, el recurrente objetó la factura de $52,241.78 por treinta y uno (31) meses de servicio, emitida por LUMA el 16 de febrero de 2022, al entender que dicha suma no era proporcional al consumo de la energía eléctrica en su propiedad. Específicamente, solicitó el ajuste de la factura a razón de una suma no mayor de $410.00 mensuales, correspondientes al promedio del consumo para dichas facturas, y que se eliminara una suma de $244.80 por atrasos.

En respuesta, el 28 de abril de 2022, LUMA notificó al recurrente su determinación inicial. Indicó que, tras realizar una investigación, ajustó una factura reclamada del 14 de marzo de 2022 y acreditó la suma de $141.16. En adición, indicó que el balance de la cuenta del recurrente ascendía a $21,764.58.[4] El 18 de mayo de 2022, el recurrente solicitó a LUMA reconsideración de esta comunicación. Allí mismo, también objetó la investigación realizada. En especial, el que LUMA no estableció la fórmula, los cálculos ni los mecanismos utilizados para llegar a su ajuste. El legajo apelativo refleja que el 22 de junio de 2022, LUMA emitió al peticionario una misiva en la que se sostuvo la decisión emitida por la Oficina de Reclamaciones de Factura de LUMA.[5]

Así las cosas, tras varios incidentes,[6] el 27 de febrero de 2023, el recurrente presentó una *Revisión Formal de Facturas de Servicio Eléctrico* ante el NEPR.[7] Esencialmente, solicitó que se adjudicara a su favor la querella presentada en contra de LUMA por cuanto esta no adjudicó una decisión

---

[3] Apéndice del Recurrente, a las págs. 7-9.

[4] *Íd.*, a la pág. 23.

[5] Es importante destacar que en dicha comunicación se le advirtió de su derecho a someter un recurso de revisión ante el NEPR no más tarde del 22 de julio de 2022. Véase, pág. 8 del Apéndice de LUMA.

[6] Es menester mencionar que el 15 de diciembre de 2022, el recurrente remitió a LUMA una *Solicitud de Estado de los Procedimientos sobre Solicitud de Reconsideración y Objeción a Factura Corregida*[6] en la que reiteró su deseo de conocer el estado de su objeción; que el 16 de diciembre de 2022, LUMA le cursó una misiva en la que le solicitó la satisfacción de una deuda de $22,271.85 para que se evitara la desconexión del servicio eléctrico; y que el 12 de enero de 2023, el recurrente solicitó que LUMA aclarara el aviso de treinta (30) días, pues daba la impresión de que se trataba de un caso nuevo.

[7] *Íd.*, a las págs. 1-5.

dentro del término establecido por ley. Posteriormente, el 26 de abril de 2023, presentó una *Moción Solicitando se Dicte Orden*[8] en la que resaltó que, pese a haber solicitado y obtenido una extensión de prórroga para contestar la querella, la recurrida no había respondido a esta, pese a que el plazo otorgado había vencido. Por esta razón, solicitó que, al amparo del Art. 6.27(5) de la Ley 57-2014, se adjudicara la querella a su favor de forma automática.

Mediante *Orden* del 9 de mayo de 2023, el NEPR denegó su solicitud. Al hacerlo, resolvió que la adjudicación automática de la querella al amparo del antedicho artículo procedía en aquellos casos en los que la compañía de energía no notificó por escrito la determinación final a la objeción de la factura; situación que no estaba presente en el caso de autos.[9] El 14 de mayo de 2023, el recurrente solicitó reconsideración de esta decisión.[10] Mientras tanto, el 2 de junio de 2023, LUMA presentó *Moci[ó]n en Cumplimiento de Orden y Oposici[ó]n a Solicitud de Reconsideraci[ó]n*[11] que fue replicada por el señor Colón Nieves mediante escrito sometido el 5 de junio de 2023.

Posteriormente, el 16 de junio de 2023, LUMA presentó una *Solicitud de Resoluci[ó]n Sumaria* en la que adujo que el NEPR carecía de jurisdicción para atender el reclamo del recurrente, pues la solicitud de revisión presentada por el recurrente fue sometida fuera de término.[12] En síntesis, expuso que la determinación final sobre la controversia fue notificada el 22 de junio de 2022. Siendo ello así, y conforme el reglamento vigente,[13] el plazo para acudir en revisión de tal dictamen venció el 22 de julio de ese mismo año. Específicamente, arguyó que, el 22 de junio de 2022, le notificó al recurrente la determinación final sobre la querella, de manera que el

---

[8] *Íd.*, a las págs. 46-47.
[9] *Íd.*, a las págs. 50-51.
[10] Apéndice del Recurrente, a las págs. 52-54.
[11] *Íd.*, a las págs. 58-63.
[12] *Íd.*, a las págs. 68-80.
[13] LUMA citó específicamente el Reglamento de Procedimientos Adjudicativos, Avisos de Incumplimiento, Revisión de Tarifas e Investigaciones, Reglamento Núm. 8543, Comisión de Energía de Puerto Rico, 18 de diciembre de 2014

término para acudir ante el NEPR venció el 22 de julio del mismo año. En ese sentido, alegó que el petitorio de revisión fue presentado el 27 de febrero de 2023, fecha en la que la referida entidad administrativa ya había perdido jurisdicción.

Tras varios incidentes procesales, el 25 de octubre de 2023, el recurrente instó una *Moción en Oposición a Solicitud de Resolución Sumaria*.[14] En esta, sostuvo que LUMA nunca notificó su determinación de la solicitud de reconsideración dentro del término establecido por ley para ello. Específicamente, esgrimió que, conforme al Artículo 6.27 (a) (5) de la Ley Núm. 57-2014, *infra*, la recurrida tenía hasta el 19 de junio de 2022 para notificar su decisión final, cosa que no hizo. En virtud de ello, reclamó que la querella debía ser adjudicada a su favor de manera automática, de conformidad con el referido articulado. A su vez, señaló que ni LUMA ni el NEPR podían ir en contra del mandamiento de la antedicha ley por lo que sostuvo que su solicitud ante el NEPR no era de una revisión sino una petición para que el foro administrativo pusiera en vigor lo establecido por ley.

El 21 de junio de 2024, el NEPR declaró *no ha lugar* la solicitud de resolución sumaria presentada por LUMA.[15] Específicamente, determinó que existían controversias sustanciales sobre hechos esenciales que impedían una resolución por la vía sumaria. Cónsono con ello, razonó que era menester otorgarles a las partes la oportunidad de presentar prueba a los efectos de si la recurrida cumplió con la reglamentación aplicable, si en el caso es de aplicación la figura de incuria y si el recurrente solicitó algún remedio en su objeción. El 8 de julio de 2024, LUMA presentó una *Solicitud de Reconsideración*.[16] Según allí la recurrida señaló, el señor Colón Nieves no controvirtió los hechos incontrovertidos que propuso al solicitar la

---

[14] Apéndice del Recurrente, a las págs. 103-111.
[15] *Íd.*, a las págs. 147-151.
[16] *Íd.*, a las págs. 153-163.

resolución sumaria de caso. Por consiguiente, no había controversia de que LUMA notificó la determinación final de la queja mediante carta con fecha de 22 de junio de 2022. De la misma forma, LUMA catalogó como incontrovertido el hecho de que el recurrente presentó su querella ante el NEPR el 27 de febrero de 2023, cuando la referida agencia no tenía jurisdicción, pues los reglamentos aplicables establecen un término de treinta (30) días para acudir ante el NEPR.

En respuesta a este escrito, el 11 de julio de 2024, el recurrente presentó una *Moción en Oposición Parcial a Solicitud de Reconsideración*.[17] Arguyó que la carta emitida por LUMA con fecha de 22 de junio de 2022 fue notificada el día 23 del mismo mes y año. En ese sentido, reiteró que lo único que procedía en el presente caso era la adjudicación automática de la querella a su favor. Además, sostuvo que el término para acudir ante el NEPR no vencía toda vez que la objeción a la factura se adjudicó automáticamente a su favor y que su recurso ante dicho organismo se circunscribía a poner en práctica un derecho adquirido estatutariamente así como para eliminar la deuda de la factura.

Tras varios incidentes procesales, el 13 de junio de 2025, notificada el 16, el NEPR emitió *Resolución Final y Orden*.[18] A través de su dictamen, el foro administrativo determinó que, en efecto, LUMA incumplió con su deber de notificar la decisión final en el caso dentro del término establecido por ley. Empero, resolvió que el recurrente no acudió al NEPR oportunamente. Específicamente, estableció que debido a que LUMA debió notificar su decisión en o antes del 17 de junio de 2022, el plazo disponible para que el señor Colón Nieves recurriera ante el foro administrativo vencía el 18 de julio del mismo año. El NEPR determinó que el recurrente no demostró justa causa por la cual no acudió ante el NEPR dentro del término

---

[17] Apéndice del Recurrente, a las págs. 164-168.
[18] *Íd.*, a las págs. 214-221.

de cumplimiento estricto establecido para ello. Consecuentemente, resolvió que carecía de jurisdicción y archivó la querella instada.

En total desacuerdo, el recurrente acudió ante nos mediante el presente recurso y señaló al foro administrativo por la comisión de los siguientes errores:

1. Erró el Negociado de Energía Eléctrica de Puerto Rico al no concederle automáticamente el remedio solicitado a la parte recurrente y desestimar la querella en conformidad con lo establecido en el Reglamento de Procedimientos Adjudicativos, Avisos de Incumplimiento, Revisión de Tarifas e Investigaciones (Reglamento 8543).

2. Erró el Negociado de Energía Eléctrica de Puerto Rico al no concederle automáticamente el remedio solicitado a la parte recurrente y desestimar la querella y en contra con lo establecido en la Ley de Transformación y ALIVIO Energético (Ley [5]7-2014) y la jurisprudencia aplicable.[19]

LUMA compareció ante nos el 13 de agosto de 2025, al presentar su *Alegato de la Recurrida*.[20] En este escrito, principalmente, arguye que el recurrente no planteó justa causa para acudir ante el NEPR dentro del término de treinta (30) días a partir de que debió emitir su determinación final sobre la factura objetada, por lo que la desestimación decretada era correcta en derecho.

Con el beneficio de la comparecencia de ambas partes, así como del expediente ante nos, procedemos a resolver el asunto no sin antes exponer el marco jurídico aplicable.

-II-

-A-

El Tribunal de Apelaciones tiene la facultad de revisar las actuaciones administrativas al amparo de la Ley Núm. 38 de junio de 2017, según enmendada, mejor conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 3 LPRA sec. 9601 *et seq.* (LPAU). A tales efectos, la Sección 4.1 de la LPAU establece que la revisión

---

[19] SUMAC TA, Entrada Núm. 1 (negrillas e itálicas suprimidas).
[20] *Íd.*, Entrada Núm. 4.

judicial aplicable a aquellas órdenes, resoluciones y providencias adjudicativas finales dictada por las agencias serán revisadas por el Tribunal de Apelaciones mediante Recurso de Revisión. 3 LPRA sec. 9671. Asimismo, la Sección 4.2 de la referida ley establece que la parte adversamente afectada por una orden o resolución final de una agencia, que haya agotado todos los remedios provistos por la agencia o el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión dentro de treinta (30) días contados a partir de la fecha de archivo en autos de la notificación de la orden o resolución final. *Íd.*, sec. 9672. La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. Empresas Ferrer v. ARPe, 172 DPR 254, 264 (2007).

Para impugnar la razonabilidad de la determinación administrativa, es necesario que la parte recurrente señale la prueba en el récord que reduzca o menoscabe el peso de la evidencia que obra en el expediente administrativo. Domínguez v. Caguas Expressway Motors, 148 DPR 387, 397-398 (1999) (citando a Hilton Hotels v. Junta Salario Mínimo, 74 DPR 670, 686 (1953)). La misma debe ser suficiente como para que pueda descartarse en derecho la presunción de corrección de la determinación administrativa, no pudiendo descansar en meras alegaciones. Com. Vec. Pro-Mej., Inc. v. JP, 147 DPR 750, 761 (1999). El criterio rector para examinar una decisión administrativa es la razonabilidad de la actuación de la agencia recurrida. González Segarra et al. v. CFSE, 188 DPR 252, 276 (2013).

Por lo tanto, si al momento de examinar un dictamen administrativo se determinar que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales

fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. IFCO Recycling v. Aut. Desp. Sólidos, 184 DPR 712 (2012) (citando a Empresas Ferrer, *supra*, a la pág. 264).

Ahora bien, cabe resaltar la más reciente expresión del Tribunal Supremo de Puerto Rico respecto a la intervención judicial revisora de las determinaciones administrativas. En Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros, 2025 TSPR 56, 215 DPR ___ (2025), el Máximo Foro local adoptó lo resuelto por el Tribunal Supremo de Estados Unidos en Loper Bright Enterprises v. Raimondo, 603 U.S. 309 (2024), en cuanto a que la deferencia *Chevron*, doctrina que imponía a los foros judiciales la obligación de otorgarle deferencia a la interpretación de las agencias administrativas, incluso cuando el tribunal entendiera que existe una mejor interpretación,[21] atenta contra los principios del Poder Judicial. Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros, *supra*, a la pág. 26.

Asimismo, el Más Alto Foro local hizo referencia a la determinación del Máximo Foro federal que el *Administrative Procedure Act*, 5 U.S.C. 551 *et seq.*, pieza legislativa federal que inspiró nuestra LPAU, no impone ninguna regla de deferencia que el Poder Judicial debe aplicar a la hora de atender cuestiones de derecho al revisar las actuaciones administrativas. Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros, *supra*, a la pág. 27.

No obstante lo anterior, el Tribunal Supremo de Puerto Rico expresó que:

> [A]l ejercitar dicho criterio, los tribunales pueden apoyarse, como lo han hecho desde el inicio, en las interpretaciones de las agencias. . . . Sin embargo, tales interpretaciones constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía de conformidad con la APA; y no avalar ciegamente, como se solía hacer en el pasado. *Íd.*, (cita depurada).

---

[21] *Véase* Chevron USA v. Natural Res. Def. Council, 467 U.S. 837 (1984).

En ese sentido, el Tribunal Supremo fue enfático en cuanto a que los tribunales debemos ejercer un juicio independiente al decidir si un organismo administrativo ha actuado dentro del marco de sus facultades y que, "contrario a la práctica de las pesadas décadas, los tribunales no tienen que darle deferencia a la interpretación de derecho que haga una agencia simplemente porque la ley es ambigua". *Íd.*, a la pág. 28 (cita depurada y énfasis suprimido). Es decir, "al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática, . . . sino que por los mecanismos interpretativos propios del Poder Judicial." *Íd.*, a la pág. 32 (énfasis suprimido).

-B-

La Ley Núm. 57 de 27 de mayo de 2014, según enmendada, mejor conocida como la *Ley de Transformación y ALIVIO Energético*, 22 LPRA sec. 1051 *et seq*. (Ley Núm. 57), fue aprobada con el fin de transformar y restructurar el sector de energía eléctrica en Puerto Rico. El referido estatuto, entre otras cosas, creó el Negociado de Energía de Puerto Rico. Conforme al Artículo 6.3 de la Ley Núm. 57, *supra*, los poderes y deberes del NEPR, en lo pertinente, son los siguientes:

(a) Fiscalizar y asegurar la cabal ejecución e implementación de la política pública sobre el servicio eléctrica en Puerto Rico.

(b) Establecer mediante reglamento las normas de política pública en relación con las compañías de servicio eléctrico, así como toda transacción, acción u omisión que incida sobre la red eléctrica y la infraestructura eléctrica en Puerto Rico, e implementar dichas normas de política pública. Estos reglamentos deberán ser cónsonos con la política pública energética declarada por vía de legislación.

(c) Establecer e implementar los reglamentos y las acciones regulatorias necesarias para garantizar la capacidad, confiabilidad, seguridad, eficiencia y razonabilidad en tarifas del sistema eléctrico de Puerto Rico y establecer las guías, estándares, prácticas y procesos a seguir para los procesos de compra de energía, la modernización de plantas o instalaciones generadoras de energía, disponiéndose que todo contrato de compraventa de energía deberá cumplir con los estándares, términos y condiciones establecidos por el NEPR de

conformidad con lo dispuesto en la Ley de Política Pública Energética y esta Ley.

(d) Fiscalizar la calidad, eficiencia y confiabilidad del servicio eléctrico provisto por cualquier compañía de energía certificada en Puerto Rico para garantizar una red robusta que atienda las necesidades de la isla.

[…]

(l) Atender casos y controversias sobre el cumplimiento de los municipios, las agencias de gobierno y otros sectores públicos y privados con la política de conservación y eficiencia energética, y otorgar los remedios adecuados para asegurar la ejecución y el cumplimiento con dicha política pública.

[…]

(rr) Revisar decisiones finales de las compañías de energía con respecto a querellas y solicitudes de investigación de sus clientes. Todas las órdenes que expida y emita el NEPR se expedirán a nombre del Negociado de Energía de Puerto Rico y de la Junta Reglamentadora de Servicio Público de Puerto Rico. Todas las acciones, reglamentaciones y determinaciones del NEPR se guiarán por las leyes aplicables, por el interés público y por el interés de proteger los derechos de los clientes o consumidores. Las disposiciones de esta Ley serán interpretadas liberalmente para poder alcanzar sus propósitos y dondequiera que algún poder específico o autoridad sea dada al NEPR, la enumeración no se interpretara como que excluye o impide cualquier otro poder o autoridad de otra manera conferida a esta. El NEPR aquí creado tendrá, además de los poderes enumerados en esta Ley, todos los poderes adicionales implícitos e incidentales que sean apropiados y necesarios y para efectuar y llevar a cabo, desempeñar y ejercitar todos los poderes antes mencionados y para alcanzar los propósitos de esta Ley. 22 LPRA sec. 1054b.

Cónsono con lo anterior, el Artículo 6.4 de la referida ley le otorgó jurisdicción primaria y exclusiva al NEPR sobre, *inter alia*, "**[l]os casos y controversias relacionadas con la revisión de facturación de las compañías de energía a sus clientes por los servicios de energía eléctrica**." *Íd.*, sec. 1054c (énfasis nuestro).

Asimismo, el antedicho artículo dispone que el NEPR posee jurisdicción sobre querellas por incumplimientos con la política pública energética. Particularmente, establece lo siguiente:

(1) A petición de alguna parte afectada con legitimación activa, y según se establece en esta Ley, el NEPR podrá atender querellas en las que se alegue y reclame por el incumplimiento de una compañía de servicio eléctrico con la política pública energética del Gobierno de Puerto Rico, según expresada en la "Ley de Política Pública Energética de Puerto Rico" y el derecho vigente. De igual forma, el NEPR podrá atender querellas sobre las

transacciones o actos jurídicos relacionados con la compra de energía o con la compra de combustible; sobre contratos entre la Autoridad o su sucesora, el Contratante de la red de transmisión y distribución, los productores independientes de energía y las compañías de energía; sobre los casos y controversias entre estos; sobre las tarifas de trasbordo y cargos de interconexión; y en casos y controversias sobre trasbordo de energía eléctrica o interconexión entre la Autoridad, su sucesora o sus subsidiarias, o el Contratante de la red de transmisión y distribución, y toda persona que esté, o interese estar, conectada a la red de energía eléctrica dentro del Gobierno de Puerto Rico o toda persona con un interés directo o indirecto en esos servicios de energía eléctrica.

(2) Toda querella presentada bajo este Artículo tendrá que ser presentada bajo juramento y establecerá con alegaciones específicas la naturaleza de su reclamo y los remedios solicitados.

(3) Luego de presentada la querella, durante su proceso de evaluación y adjudicación, el NEPR podrá solicitar a la parte querellada cualquier información que sea pertinente a la controversia. Esta información estará a la disposición de la parte querellante, excepto que el NEPR podrá, a petición de alguna parte interesada y al amparo de lo establecido en el Artículo 6.15 de esta Ley, proteger la información que sea confidencial o privilegiada. *Íd.*

Atinente al asunto ante nos, el Artículo 6.27 (a) de la Ley Núm. 57 establece, en lo pertinente, que:

(1) Todo cliente podrá objetar o impugnar cualquier cargo, clasificación errónea de tipo de tarifa, cálculo matemático o ajuste de la factura de servicio eléctrico y solicitar una investigación por parte de la compañía de energía certificada dentro de un término de treinta (30) días a partir de la fecha en que dicha factura sea depositada en el correo postal o sea enviada al cliente vía correo electrónico. . . .

(2) […]

(3) Una vez notificada la objeción . . . , la compañía de energía certificada deberá iniciar la investigación o el proceso adjudicativo que proceda dentro del término de treinta (30) días, contados a partir de la fecha en que el cliente notificó su objeción. En caso de que la compañía de energía certificada no inicie el proceso dentro del término de treinta (30) días, la objeción será adjudicada a favor del cliente. La compañía de energía certificada deberá concluir la investigación o proceso administrativo, emitir la correspondiente resolución e informar al cliente el resultado dentro de un término de sesenta (60) días contados a partir de la fecha de comienzo de la investigación o proceso adjudicativo. Si la compañía de energía certificada no emite la referida resolución o no informa al cliente de la misma dentro del término de sesenta (60) días, la objeción será adjudicada a favor del cliente. Al notificar el resultado de la investigación, la compañía de servicio eléctrico informará al cliente sobre su derecho a solicitar la reconsideración de dicho resultado y el término dentro del cual deberá solicitar la reconsideración.

(4) **Si el cliente no está conforme con el resultado de la investigación de la compañía de servicio eléctrico, deberá solicitar por escrito a dicha compañía la reconsideración de esa decisión inicial por parte de un funcionario de mayor jerarquía. Toda solicitud de reconsideración deberá presentarse dentro del término de veinte (20) días contados a partir de la notificación de la decisión de la compañía de servicio eléctrico sobre el resultado de la investigación. El cliente podrá presentar y notificar su solicitud de reconsideración a la compañía de servicio eléctrico mediante correo certificado, fax o correo electrónico, siempre y cuando ésta se someta a través de los contactos específicos provistos por la compañía para estos propósitos.**

(5) **La compañía de energía certificada tendrá un término de treinta (30) días a partir de la presentación de la solicitud de reconsideración para evaluarla y notificar por escrito al solicitante su determinación final sobre el resultado de la investigación. Si la compañía de energía certificada no emite la referida notificación por escrito dentro del término de treinta (30) días, la objeción será adjudicada a favor del cliente. Toda determinación final deberá exponer claramente por escrito que el cliente tendrá derecho de presentar un recurso de revisión ante la Comisión y una breve descripción de cómo presentar tal recurso**. *Íd.*, sec. 1054z (énfasis suplido).

-C-

El Reglamento de Procedimientos Adjudicativos, Avisos de Incumplimiento, Revisión de Tarifas e Investigaciones, Reglamento Núm. 8543, Comisión de Energía de Puerto Rico, 18 de diciembre de 2014 (Reglamento Núm. 8543), se adoptó al amparo de los Artículos 6.3, 6.4, 6.24 y 6.25 de la Ley Núm. 57, *supra*, secs. 1054b, 1054c, 1054w y 1054x. Este aplica a todos los procedimientos adjudicativos, a los procedimientos de avisos de incumplimiento y a las investigaciones que se ventilen ante o por el NEPR. Reglamento Núm. 8543, Sección 1.04, a las págs. 6-7.

En concordancia con el Artículo 6.27 (e) de la Ley Núm. 57, *supra*, el referido reglamento establece lo siguiente:

Toda querella o recurso para solicitar a la Comisión la revisión (i) de facturas de la AEE o de cualquier compañía, por servicio eléctrico, (ii) de decisiones de la AEE sobre el procedimiento de interconexión, (iii) de decisiones de la AEE sobre la participación en el programa de medición neta o en cualquier otro programa relacionado, o (iv) de cualquier otra decisión de una compañía en relación con la prestación del servicio eléctrico a un cliente, deberá ser presentada dentro del término de treinta (30) días, contados a partir de la fecha en que la AEE o la compañía de servicio eléctrico de la que se trate haya emitido su decisión final sobre el asunto. **En caso de que la AEE o la compañía de servicio eléctrico de la que se trate no haya emitido una decisión final, el referido término comenzará a transcurrir a partir de la fecha en que debió emitirse**

**la decisión**. Reglamento Núm. 8543, Sección 3.04, a la pág. 15 (énfasis nuestro).

-D-

Finalmente, al amparo del Artículo 6.27 de la Ley Núm. 57, *supra*, sec. 1054z, se adoptó el Reglamento sobre el Procedimiento para la Revisión de Facturas y Suspensión del Servicio Eléctrico, Reglamento Núm. 8863, Comisión de Energía de Puerto Rico, 1 de diciembre de 2016 (Reglamento Núm. 8863), con el propósito de establecer las normas que rigen los procedimientos para atender y resolver toda disputa entre los clientes y las compañías de energía eléctrica que surja en relación a las facturas que éstas emitan.

El Reglamento Núm. 8863 establece que la compañía de servicio eléctrico que recibe una objeción y solicitud de investigación por parte de un cliente sobre una factura tiene la obligación de iniciar la investigación correspondiente dentro del término de treinta (30) días a partir de la notificación de la objeción. Reglamento Núm. 8863, Sección 4.10, a la pág. 16.

De igual forma, dispone que si la compañía de servicio eléctrico no cumple con iniciar la investigación dentro del referido término, "**se entenderá que la compañía ha declarado con lugar la objeción del Cliente y que se obliga a hacer los ajustes correspondientes en la factura objetada, según solicitado por el Cliente**." *Íd.*, (énfasis nuestro).

Una vez inicia la investigación dentro del término dispuesto para ello, el Reglamento Núm. 8863 dispone que la compañía de servicio eléctrico debe culminar dicha investigación y emitir la resolución correspondiente al cliente dentro del término de sesenta (60) días a partir de la fecha de comienzo de la investigación. *Íd.*, Sección 4.11, a la pág. 17.

Igualmente, si la compañía de servicio eléctrico no emite la resolución dentro del antedicho término, "**se entenderá que la compañía ha declarado con lugar la objeción del Cliente y que se obliga a hacer los**

**ajustes correspondientes en la factura objetada, según solicitado por el Cliente**." *Íd.*, (énfasis nuestro).

Ahora bien, el Reglamento Núm. 8863 provee a los clientes inconformes de la determinación resultante de la investigación efectuada por la compañía de servicio eléctrico, el mecanismo para solicitar una reconsideración. *Íd.*, Sección 4.13, a la pág. 18. Dicha solicitud debe ser remitida a la atención de un funcionario de mayor jerarquía que aquel que haya realizado la determinación inicial. *Íd.* De igual forma, el referido reglamento establece la normativa que rige el proceso de adjudicación por parte de la compañía de servicio eléctrico sobre una solicitud de reconsideración de su determinación inicial. A esos fines, el Reglamento Núm. 8863 establece lo siguiente:

> La Compañía de Servicio Eléctrico evaluará la solicitud de reconsideración y notificará por escrito al Cliente su decisión final dentro del término de treinta (30) días, contados a partir de la fecha de presentación de la solicitud de reconsideración. . . .
>
> Toda decisión final de la Compañía de Servicio Eléctrico deberá apercibir claramente por escrito al Cliente sobre su derecho a presentar un recurso de revisión ante la Comisión. La Compañía de Servicio Eléctrico informará al Cliente que tiene un término de treinta (30) días para presentar un recurso de revisión ante la Comisión, así como información necesaria para presentar completa y oportunamente dicha solicitud de reconsideración ante la Comisión. La Compañía incluirá la información de contacto de la Comisión en dicha notificación.
>
> **En caso de que la Compañía no emita o notifique su decisión final en torno a la solicitud de reconsideración dentro del término establecido en esta Sección, se entenderá que la Compañía ha declarado con lugar la objeción del Cliente y que se obliga a hacer los ajustes correspondientes en la factura objetada, según solicitado por el Cliente. La compañía deberá efectuar los referidos ajustes y notificar por escrito al Cliente dentro del término de quince (15) días, contados a partir de la fecha de vencimiento del término original de treinta (30) días.** *Íd.*, Sección 4.14, a la pág. 18 (énfasis nuestro).

Expuesto el marco jurídico, procedemos a disponer del recurso ante nuestra consideración.

-III-

En el presente caso, el recurrente señala al NEPR por la comisión de dos (2) errores. En síntesis, sostiene que el NEPR incidió al no adjudicar

automáticamente a su favor la querella instada, de conformidad con lo establecido en la normativa jurídica aplicable. Por estar íntimamente relacionados entre sí, los discutiremos conjuntamente.

No le asiste la razón.

Es cierto que conforme el lenguaje de la Ley Núm. 57, *supra*, al investigar la objeción de una factura, al emitir su determinación inicial o, **tras recibir una solicitud de reconsideración**, LUMA debe emitir su determinación final para cada una de las referidas circunstancias dentro del plazo que el estatuto establece. Igualmente, es innegable que la consecuencia inmediata en caso de no hacerlo es la adjudicación automática de la querella a favor del cliente que la interpuso. Explícitamente, la referida ley indica que la compañía de servicio eléctrico- o sea, LUMA- "tendrá un término de treinta (30) días a partir de la presentación de la solicitud de reconsideración para evaluarla y notificar por escrito al solicitante su determinación final sobre el resultado de la investigación. **Si la compañía de energía certificada no emite la referida notificación por escrito dentro del término de treinta (30) días, la objeción será adjudicada a favor del cliente**." Artículo 6.27 de la Ley Núm. 57, *supra*, 22 LPRA sec. 1054z.

Lo anterior también está complementado por el Reglamento Núm. 8863, cuyo propósito, reiteramos, es disponer las normas que rigen los procedimientos para atender y resolver disputas entre clientes y las compañías de servicio eléctrico sobre facturas. En específico, el referido reglamento dispone lo siguiente:

> La Compañía de Servicio Eléctrico **evaluará la solicitud de reconsideración y notificará por escrito al Cliente su decisión final dentro del término de treinta (30) días, contados a partir de la fecha de presentación de la solicitud de reconsideración**. . . .
>
> […]
>
> **En caso de que la Compañía no emita o notifique su decisión final en torno a la solicitud de reconsideración dentro del término establecido en esta Sección, se entenderá que la Compañía ha declarado con lugar la objeción del Cliente y que se obliga a hacer los ajustes correspondientes en la factura objetada, según**

**solicitado por el Cliente**. . . . Reglamento Núm. 8863, Sección 4.14, a la pág. 18 (énfasis nuestro).

En el presente caso, no hay controversia sobre el hecho de que LUMA emitió su determinación final fuera el término establecido por la Ley Núm. 57-2014, *supra*. De hecho, la propia recurrida así lo admite en su alegato ante nos y, asimismo, el NEPR lo determinó en su dictamen. En ese sentido, por mandato y virtud de la Ley Núm. 57, *supra*, la objeción sobre la factura presentada por el recurrente advino adjudicada a su favor. Igualmente, por virtud del Reglamento Núm. 8863, LUMA "**[declaró] con lugar la objeción del Cliente y . . . se oblig[ó] a hacer los ajustes correspondientes en la factura objetada, según solicitado**. . . ." Reglamento Núm. 8863, Sección 4.14, a la pág. 18 (énfasis nuestro).

Sin embargo, no podemos abstraernos de las disposiciones que regulan aquellos procesos adjudicativos que se ventilan ante el NEPR. Cónsono con ello, el Reglamento Núm. 8543, cuyo propósito, como vimos, es establecer las normas que rigen los trámites adjudicativos ante el NEPR, en su Sección 3.04, a la pág. 15, dispone que todos los recursos en aras de iniciar los procesos adjudicativos del NEPR deben ser presentados dentro del término de treinta (30) días a partir de la notificación de la determinación emitida por la compañía de servicio eléctrico. El referido reglamento especifica que "[e]n caso de que la AEE o la compañía de servicio eléctrico de la que se trate **no haya emitido una decisión final, el referido término comenzará a transcurrir a partir de la fecha en que debió emitirse la decisión**." (Énfasis nuestro).

Lo cierto es que, en el presente caso, el proceso iniciado por el recurrente se trata efectivamente de un proceso adjudicativo. Ciertamente, aun si la Ley Núm. 57, *supra*, concedió al recurrente la adjudicación ventajosa de su objeción a la factura tras el admitido incumplimiento de LUMA de notificar su determinación final dentro del término establecido por ley, la disposición en virtud de la cual el NEPR adquiere jurisdicción

sobre una controversia entre un cliente y una compañía de servicio eléctrico es clara en cuanto a que dicha jurisdicción estaba supeditada a que el recurrente acudiera dentro del término de treinta (30) días contados a partir de la fecha en que LUMA debió emitir y notificar su determinación final.

En el presente caso, el recurrente presentó su solicitud de reconsideración a la determinación inicial el **17 de mayo de 2022**. Ante ello, LUMA debió emitir su determinación final en o antes del **16 de junio de 2022**, fecha a partir de la cual comenzó a transcurrir el término para que el recurrente acudiera ante el NEPR. Por ende, el término de treinta (30) días dentro del cual, conforme a la normativa jurídica, el recurrente debía acudir e invocar las facultades adjudicativas del NEPR culminó el **16 de julio del 2022**. Sin embargo, toda vez que el antedicho día fue un sábado, el término se extendió al próximo día laborable, el lunes, **18 de julio de 2022**. Por consiguiente, habiéndose instado el recurso ante el NEPR el **27 de febrero de 2023**, lamentablemente, el foro perdió la jurisdicción sobre el asunto.[22]

Recalcamos que si el recurrente hubiera acudido ante el NEPR dentro de los treinta (30) días siguientes a la fecha en que LUMA debió emitir y notificar su determinación final, el único proceder del NEPR en el presente caso hubiera sido ordenarle a la recurrida a realizar los ajustes correspondientes a la factura a los cuales, por virtud de ley y su propia inacción, se obligó. No obstante, el incumplimiento claro de LUMA no es óbice para ignorar el incumplimiento del recurrente de las disposiciones que rigen los procesos adjudicativos del NEPR, cuando ello implicaría conferirle a dicho foro una jurisdicción desafortunadamente perdida y en contravención a sus propias normativas.

---

[22] Aclaramos que, aun si tomáramos como punto de partida el plazo más beneficioso al recurrente y contáramos el tiempo desde la notificación tardía emitida el 22 de junio de 2025, todavía el NEPR carecería de jurisdicción y tendría que desestimarlo. Esto, pues los treinta (30) días para acudir en revisión ante el NEPR que allí le fueron advertido tenía, vencían el 22 de julio de 2022. Sin embargo, como sabemos, **lo hizo el 27 de febrero de 2023; 220 días después.**

Cónsono con todo lo anterior, procede confirmar la determinación del NEPR.

-IV-

Por los fundamentos que anteceden, se **confirma** la *Resolución Final y Orden* dictada por el NEPR.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones